UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff-Appellee,<br>v.<br>ROWLAND MARCUS ANDRADE,<br><br>Defendant-Appellant. | Case Nos. 25-5095; 25-6056; 25-6507<br><br>D.C. No. 3:20-cr-00249-RS-1<br><br>Northern District of California,<br>San Francisco<br><br>**DEFENDANT'S MOTION REQUESTING THE REMOVAL OF APPOINTED CJA COUNSEL & REQUEST FOR A 90-DAY EXTENSION OF THE BRIEFING SCHEDULE TO GET OFF OF CJA** |

### DEFENDANT'S MOTION FOR APPOINTMENT OF COUNSEL UNDER THE CRIMINAL JUSTICE ACT

On November 14, 2025, the Court appointed Sandy Baggett—who resides outside the Northern District of California—as CJA appellate counsel, replacing attorney John Pierce. However, in doing so, the Court appears to have overlooked my prior requests that appellate counsel have federal appellate experience, has the capacity to handle a voluminous appeal, possess specific and necessary qualifications, including—but not limited to—not being financially dependent on CJA compensation in order to make a living (Dkt. 24). The Court also overlooked Mr. Pierce's willingness to cooperate in any screening or merits review process, acknowledging the extensive conflicts issues in this case (Dkt. 23-1 at p.3).

Appellant Rowland Marcus Andrade, myself, respectfully moves this Court to remove previously appointed CJA Counsel and to allow me 90 days to try and obtain appellate counsel with the proper skill set required in this case that contains issues relating to National Security, CIPA, CIA Assets, and the use of Government Informants. This motion is supported by

Appellant's previously filed Motion for Appellant Counsel that included a request that CJA Counsel contain the necessary skill sets. (Dkt. 23).

## I. INTRODUCTION

This case has to do with election interference, the wrongful targeting of me when I refused to become an informant and notified the FBI that their informant was making threats against me. The government informant learned of my allegations and then threatened to hand over my assets with the threat of prosecution and forfeiture actions. See 9th Cir. Case 20-72001.

Unknown to me at the time, the government authorized their informant to engage in international money laundering behind my back with the utilization of my digital currency during the same time frame as my indictment. In order to further their operation which they labeled as "Operation Clutch Counsil" in hopes that it would speed up their promotions while even stating how one of the FBI agents would become the next director of the FBI.

The FBI agents authorized informant Jack Abramoff to convince me to do an Initial Public Offering with my digital currency in an effort to get foreign funds from Pro Russian and Anti Ukrainian Oligarchs, and to create a contingency plan (false marketing campaign) in order to get rid of me in the event I found out about their illegally sanctioned Russia Collusion operation which was supported by the CrossFire Hurricane FBI Agents.

This case involves substantial constitutional and evidentiary issues, including alleged *Brady/Napue* violations and matters that may implicate CIPA and NSA related procedures given the government's concealment of their authorization of their informant activity, evidence spoliation and destruction of evidence in the underlying record. *See, e.g.*, D.C. Dkt. 777 at 13:9–27; D.C. Dkts. 777-9 & 777-15; *see also* 9th Cir. Dkt. 23-2 Def. Ex. A (Decl. Dent in Support of the Disclosure of CIPA Evidence).

The Court on November 14, 2025, graciously appointed CJA appellate counsel from outside of the NDCA as requested but the person didn't contain the proper skill set (federal appellate experience, CIPA, National Security, and government informant experience) consistent with § 3006A and the Court's CJA Plan. Additionally, it doesn't appear that a proper conflict check was performed prior to the CJA appellate counsel's appointment. I'm prepared to provide a list of nearly 100 people associated with my case so that a proper conflict check can be done.

The Court is also respectfully requested to put a 90 day extension on the issuance of a briefing schedule so that I can try and obtain the funding necessary to get off of CJA Appointed Counsel by once again trying to release joint stock in my (2016-2017) patent assets while also placing 10-15% of any potential funding in an attorney escrow account or with the Court to satisfy restitution and forfeiture obligations pending the outcome of the appeal and / or a 2255 motion.

## II. BACKGROUND

On October 21, 2025, my counsel, John Pierce, responded to the Court's September 30, 2025, Order (Dkt. Entry 19.1) regarding my in forma pauperis (IFP) status. In that response, counsel outlined the reasons for maintaining IFP status given my indigent status.

On October 23, 2025, the Court authorized my continued IFP status (Dkt. 22). Given my financial limitations, counsel filed a motion requesting the appointment of CJA appellate counsel (Dkt. 23-1). In that motion, counsel made several requests regarding the qualifications of CJA appellate counsel, including:

1. That the appointed CJA counsel resides outside the Northern District of California (NDCA) (Dkt. 23-1 at p.2 ¶1(a) and ¶1(b));

2. That CJA counsel have federal appellate experience, specifically in CIPA, national security, and government informant-related cases (Dkt. 23-1 at p.3 ¶2);

3. That CJA counsel has the capacity to handle a voluminous appeal, given the complexity of the case (Dkt. 23-1 at p.3 ¶3);

4. That counsel not be dependent on CJA payments, ensuring robust and independent advocacy (Dkt. 23-1 at p.3 ¶3);

5. Mr. Pierce also expressed willingness to cooperate in any screening or merits review process, acknowledging the extensive conflicts issues in this case (Dkt. 23-1 at p.3).

On November 14, 2025, Mr. Pierce inquired with the government about my request to try and release some assets to also cover legal expenses, with 10-15% of any funds received to be placed in an attorney escrow or with the Court for restitution and forfeiture purposes, pending the appeal or a §2255 motion. To date, the government has not objected to this request (See **Exhibit-A**). I had a chance to do this previously with a different person that was interested, but the government wrongfully interfered so that I couldn't provide funding for Mr. Pierce ((9th Cir. 25-5095; Dkt. 21-1 p.3 at Section 2(a)).

On November 14, 2025, the Court appointed Sandy Baggett—who resides outside the Northern District of California—as CJA appellate counsel, replacing attorney John Pierce. However, in doing so, the Court appears to have overlooked my prior requests that appellate counsel have federal appellate experience, has the capacity to handle a voluminous appeal, possess specific and necessary qualifications, including—but not limited to—not being financially dependent on CJA compensation in order to make a living (Dkt. 24). The Court also overlooked Mr. Pierce's willingness to cooperate in any screening or merits review process, acknowledging the extensive conflicts issues in this case (Dkt. 23-1 at p.3).

**III. LEGAL STANDARD**

Under 18 U.S.C. § 3006A, representation must include "investigative, expert, and other services necessary for adequate representation." *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980) (confirming that the Sixth Amendment guarantees effective assistance of counsel free from conflicts of interest). The Ninth Circuit has also recognized that ineffective-assistance claims may be raised on direct appeal—not only through habeas proceedings—as held in *United States v. Steele*, No. 12-30005 (9th Cir. 2013).[1] Although no final decision has been made whether to pursue habeas relief concurrently with the direct appeal, that determination cannot be made when appointed CJA appellate counsel is unable to provide effective assistance due to the lack of necessary expertise, an already burdensome caseload, and her dependence on CJA funding.

**IV. ARGUMENTS IN SUPPORT OF THE REMOVAL OF CJA APPELLATE COUNSEL**

a. *Lack of Capacity to Handle a Voluminous Appeal*

According to PACER, Mrs. Baggett, a sole practitioner, currently has 20 active CJA district court cases. This suggests that she is a member of the district CJA panel and that she has a full case load and may not have the capacity to manage the voluminous appeal in my case, which includes nearly 800 docket entries and potentially thousands of exhibits. Mrs. Baggett was asked if she could handle my case given her current case load and didn't answer the question. See E**xhibit-B**.

b. *Dependance on CJA Funding*

---

[1] (Justia Law https://law.justia.com/cases/federal/appellate-courts/ca9/12-30005/12-30005-2013-10-24.html)*. This ruling confirmed the circuit's practice of allowing such claims to be heard on direct appeal, distinguishing it from the practice in other circuits and aligning with the principle that defendants have a right to a meaningful opportunity to be heard on their claims.

Mrs. Baggett is fully dependent on CJA funding for her practice, which raises concerns about her independence in representing me. Given the complexity of my case, including government and judicial misconduct claims and potential conflicts, this sole reliance on CJA funding is problematic. This may affect her willingness to put all the critical issues before the Court. Mrs. Baggett was asked if this would cause issues for her or if she feels that she would suffer from reprisal and she didn't answer the question. She did admit that she had been doing CJA work for the last 2 or 3 years. See **Exhibit-B.**

   c. *Lack of Federal Appellate Experience*

A search of PACER does not indicate that Mrs. Baggett has experience handling appellate cases. All her cases appear to be district level CJA cases only. When asked about this, Mrs. Baggett only stated that she "is an appellate attorney in the 9th and 10th Circuit" without referencing her appellate experience when asked about it. See **Exhibit-B.**

   d. *Lack of Relevant Experience*

A review of Mrs. Baggett's district cases shows no experience in CIPA, national security, or government informant-related cases. When I asked Mrs. Baggett if she had experience in CIPA and national security related cases, she gave me an attorney's response by stating "If I find that I don't have the expertise or resources to handle your appeal, I have an ethical obligation to withdraw." See **Exhibit-B**.

   e. *Potential Conflict of Interest.*

There are nearly 100 individuals on the conflicts list, some of whom reside in Spokane, Washington, where Mrs. Baggett is based. I was not given the opportunity to submit the conflicts list to the Ninth Circuit CJA office or to Mrs. Baggett for review to identify any potential conflicts prior to her appointment. I did inform Mrs. Baggett about this.

### V. CONCERNS ABOUT CJA ATTORNEY DEPEPENDANCE ON CJA FUNDING

Mr. Pierce's motion (Dkt. 23-1) requested that the Ninth Circuit appoint CJA counsel who is not dependent on CJA funding, citing concerns about potential reprisals and the impact that such dependency could have on the quality of legal representation (See Dkt. 23-1 at p.2 at 1(a) and 1(b); and Dkt. 23-1 at p.3 ¶3).

There are serious concerns about the risks of reprisal for a CJA appointed attorney in a case like mine. For example, a judicial complaint was filed against the Chief Judge of the Northern District of California by an Attorney that has not been a part of this appeal. Mrs. Baggett is aware of this. When asked about her fear of reprisal, she didn't answer that question.

Given the nature of these issues surrounding my case, an attorney who is dependent on CJA funding may not be able to effectively advocate for me without fearing retaliation, particularly in light of the sensitive and controversial aspects of my case. Knowing that this is a legitimate concern, it would have been helpful if Mrs. Baggett had responded to the question. See **Exhibit-B.** Additionally, any errors on Mrs. Baggett's part would create the appearance as if the error was politically driven rather than her being ineffective because of her current 20 CJA district level case load, her lack of the required skill set and her failure to respond to the direct question I asked her about any potential fears of retaliation. This would surely cause public debate if she didn't submit the withheld classified data in the district court over to the appeals court in order to determine if the district court properly withheld it.

### VI. RELIEF REQUESTED

1. *Request for the Removal of Mrs. Baggett.*

I respectfully request that Mrs. Baggett be removed from my case for the reasons stated above and replaced with a CJA attorney who has experience handling national security issues, CIPA cases, matters involving government informants, and actual federal appellate experience. Additionally, I request that the Court direct the CJA Office to ensure that the new attorney is not financially dependent on CJA and does not have any fear of reprisal

2. *Request for a 90-day extension of the Briefing Schedule to get off CJA Support.*

I respectfully request a 90-day extension of the briefing schedule to allow time for me to try to secure funding through the sale of joint-stock and a public fundraiser so that I can also hire attorneys with the appropriate expertise in national security, CIPA, and government informant-related matters. Given that the government did not object to my request to release assets for expenses and that I am willing to disclose any funds received in advance to the government (with 10-15% deposited into an escrow account or with the Court for restitution and forfeiture pending appeal), this request is reasonable given the circumstances. Although the government should be given 5 days to object to the sale of joint-assets and to conduct a fund raiser in order to also cover legal expenses, with 10-15% of any funds received to be placed in an attorney escrow or with the Court for restitution and forfeiture purposes, pending the appeal or a §2255 motion. If the government objects, I would request 10 days to file a reply given that what a government attorney can do in a few hours, takes me way much longer to do especially since I don't have access to WestLaw or anything similar.

3. Request Regarding Attorney John Pierce.

Until future appellate counsel is located, I request that Attorney John Pierce be allowed to remain on my appellate case. If the government objects to the sale of joint stock and the fundraiser, Mr. Pierce will be needed to draft the response to their opposition. Regarding the

appointment of appellate counsel, Mr. Pierce will also be needed to review the lengthy conflict list and clarify to the CJA office who the individuals are on the list, in case the appointed appellate attorney has previously represented any of them.

Date: November 16, 2025

Respectfully Submitted,

*R. Marcus Andrade*

**Rowland Marcus Andrade**
9414 Plaza Point Drive
Missouri City, Texas 77459
361-244-0156
dojreform@protonmail.com